UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR 2705(B) NONDISCLOSURE ORDER FOR GRAND JURY SUBPOENA [GJ#21-9-131] | ) ) ) ) ) ) ) ) SC. NO. 1:22-sc-129  **Filed Under Seal** |

**APPLICATION FOR NONDISCLOSURE ORDER
UNDER 18 U.S.C. § 2705(B) AND TO SEAL FILINGS**

The United States of America, by and through its undersigned counsel, submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2705(b) directed at DocuSign, Inc. ("DocuSign"), an electronic communication service provider. The proposed Order would direct DocuSign not to disclose the existence of the attached subpoena issued by the United States on behalf of a federal Grand Jury empaneled in the United States District Court for the District of Columbia (the "Subpoena") for a period of 180 days commencing on the date of the proposed Order, unless the period of nondisclosure is later modified by the Court. The United States further applies to the Court for an Order placing this application and all related filings under seal.

**JURISDICTION**

1. This Court has jurisdiction to issue the requested order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that . . . has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the crimes being investigated are believed to have been committed in the District of Columbia and elsewhere, and a federal grand

jury in the District of Columbia is investigating the conduct described below.  *See* 18 U.S.C. § 2711(3)(A)(i).

## FACTUAL BACKGROUND

2. DocuSign is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2), in that DocuSign provides customers the ability to sign and certify documents electronically.

3. The United States is investigating possible violations of federal criminal law committed by Kevin Wan. Specifically, the government is investigating violations of Title 18, United States Code, Sections 1343 (Wire Fraud), 1344(2) (Bank Fraud), and 1957 (Money Laundering).  The United States is investigating whether the aforementioned individual and related entities have engaged in fraud related to emergency financial assistance programs authorized under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act by submitting fraudulent loan applications through the Paycheck Protection Program ("PPP").

4. The CARES Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP

loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

6. A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

8. Wan may have devised and participated in a scheme to obtain PPP loans based on fraudulent misrepresentations contained in loan applications.

9. Records obtained in the course of this investigation from lenders and loan processing companies, establish that fraudulent PPP applications submitted in the names of entities related to Wan were accessed or approved electronically using DocuSign.

10. DocuSign identifies each signed document by a unique identifier, the "Envelope ID." Each of the DocuSign Envelope IDs listed in the Subpoena is associated with a specific

document that appears to have been signed using DocuSign, with the intent to defraud, to obtain a fraudulent loan.

11. DocuSign uses personal identifying information and contact information to associate a particular user with an account, and to authenticate the user of the account. Accordingly, the Subpoena identifies an Envelope ID associated with loan applications that were signed using DocuSign.

12. DocuSign has various methods to identify related accounts by use of internet cookies,[1] creation IP address, recently-used IP address, recovery email addresses, telephone number logons and forwarding and fetching accounts.[2] Obtaining identifying information for these types of related accounts will assist in ascertaining the true identity of individuals who obtained loans as outlined above.

## LEGAL BACKGROUND

13. DocuSign provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712, governs how DocuSign may be compelled to supply communications and other records using a subpoena, court order, or search warrant. Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic

---

[1] A cookie is a small piece of data sent from a website and stored in the user's web browser while the user is browsing it. Every time the user loads the website, the browser sends the cookie back to the server to notify the user's previous activity. Cookies were designed to be a reliable mechanism for websites to remember information (such as items added in the shopping cart in an online store) or to record the user's browsing activity (including clicking particular buttons, logging in, or recording which pages were visited in the past). Cookies can also store passwords and form content a user has previously entered, such as a credit card number or an address.

[2] Forwarding accounts are email accounts to which emails are automatically forwarded. Fetching accounts are other email accounts set up to "fetch" or retrieve email from another account.

"subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a)-(b)(1)(A) allows the Government to obtain contents of communications using a search warrant. *See* 18 U.S.C. § 2703.

14. The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703. However, many have voluntarily adopted policies of notifying subscribers about such legal requests. Accordingly, when necessary, Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification. In relevant part, Section 2705(b) provides as follows:[3]

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
> (1) endangering the life or physical safety of an individual;
> (2) flight from prosecution;
> (3) destruction of or tampering with evidence;
> (4) intimidation of potential witnesses; or
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b). The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay

---

[3] Section 2705(b) contains additional requirements for legal process obtained pursuant to 18 U.S.C. § 2703(b)(1)(B), but the Government does not seek to use the proposed Order for any legal process under that provision.

notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

15. Accordingly, this application sets forth facts showing reasonable grounds to command DocuSign not to notify any other person (except attorneys for DocuSign for the purpose of receiving legal advice) of the existence of the Subpoena for a period of 180 days commencing on the date of the proposed Order, unless the period of nondisclosure is later modified by the Court.

## REQUEST FOR NON-DISCLOSURE

16. The Subpoena seeks information relevant to establishing the illegal activity under investigation and identifying the individuals responsible. Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing and confidential investigation. Once alerted to this investigation, potential targets could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential targets could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

17. Given the complex nature of the criminal activity under investigation, and also given that the criminal scheme may be ongoing, the Government anticipates that this confidential investigation will continue for the next year or longer.

18.     Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Subpoena would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)–(5).  Accordingly, this Court should command DocuSign not to notify any other person (except attorneys for DocuSign for the purpose of receiving legal advice) of the existence of the Subpoena for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.  Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

## REQUEST FOR SEALING

19.     Pursuant to Federal Rule of Criminal Procedure 6(e)(6), the United States requests that this application and the corresponding Order be sealed by the Court until such time as the Court directs otherwise.  These documents relate to an ongoing federal Grand Jury investigation that is neither public nor known to the target(s) of the investigation.  The Court has the inherent power to seal court filings when appropriate.  *United States v. Hubbard*, 650 F.2d 293, 315–16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the application and order to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant.  *See Washington Post v. Robinson*, 935 F.2d 282, 287–89 (D.C. Cir. 1991).

20.     ACCORDINGLY, it is respectfully requested that the Court grant the attached Order directing that DocuSign shall not notify any other person (except attorneys for DocuSign

for the purpose of receiving legal advice) of the existence of the Subpoena for 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court, and further directing that the application and this Order are sealed until otherwise ordered by the Court.

Dated: January 20, 2022 　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　JOSEPH BEEMSTERBOER
　　　　　　　　　　　　　　　　　　　　　　Acting Chief, Fraud Section
　　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice

　　　　　　　　　　　　　　　　　　　By:　*/s/ William Johnston*
　　　　　　　　　　　　　　　　　　　　　　William Johnston
　　　　　　　　　　　　　　　　　　　　　　Assistant Chief
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar 1030662
　　　　　　　　　　　　　　　　　　　　　　U.S. Dept. of Justice, Fraud Section
　　　　　　　　　　　　　　　　　　　　　　1400 New York Avenue NW
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　　　Tel. No.: (202) 514-0687
　　　　　　　　　　　　　　　　　　　　　　Cell: (202) 664-3486